UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

UNITED STATES OF AMERICA      )
                              )
             v.               )      No. 3:06-00013
                              )      Judge Echols
ERNEST LEROY JONES            )

MEMORANDUM

On January 30, 2006, an Information was filed charging the Defendant Ernest Leroy Jones with taking, by force and violence, United States currency from the person and presence of employees of a U.S. Bank in violation of 18 U.S.C. § 2113(a). Pending before the Court is Defendant's Motion to Suppress Statement (Docket Entry No. 24) and Defendant's Motion to Suppress Evidence (Docket Entry No. 25), to which the Government has responded in opposition. (Docket Entry Nos. 26 & 27). An evidentiary hearing was held on Defendant's motions on July 3, 2006.

During the course of the evidentiary hearing, the Court heard from several witnesses, including the Defendant. Having reviewed the record, the exhibits, and the testimony of the witnesses, after considering their interests and demeanor, the Court finds the following to be the relevant facts.[1]

_____

[1]Because these are the Court's factual findings, any contrary testimony on a specific matter has been rejected in favor of the specific fact found.

1

## I.  FACTS

On January 9, 2006, at approximately 9:25 a.m., a black male robbed the U.S. Bank located at 747 Fesslers Lane, Nashville, Tennessee.  According to witnesses later interviewed by investigators, the robber entered the bank wearing a gray ski mask and a black jacket and carried an object resembling a long gun covered by what appeared to be a white plastic bag.  In accordance with the robber's demand for money, he was given $3,245.00 in United States currency.

Investigators responding to the bank robbery interviewed a witness who had seen a black male pull into a parking space around the corner from the bank in a late 1980's or early 1990's maroon Pontiac Bonneville with extensive damage to the front end and masking tape over the brake lights. The Metropolitan Nashville Police Department ("Metro Police") issued a "be on the lookout" alert with respect to that vehicle.  Shortly thereafter, a Metro police officer saw a vehicle matching the automobile's description in the parking lot of the Executive Inn at 970 Murfreesboro Road in Nashville, Tennessee.

Members of the motel staff were interviewed and police learned that a black male using the name Ernest Jones had checked into room 153 of the motel not long before.  Metro officers and members of the Federal Bureau of Investigation's violent crime task force ("task force") undertook surveillance of the motel room and maroon Bonneville.

2

Shortly after setting up the surveillance, a black male was observed exiting Room 153 and heading towards the suspect vehicle. At around this same time, Charlie Harris, a Gallatin Police Department Detective and member of the task force, peered into the rear window of the Bonneville and saw what appeared to be a long-barreled weapon which was covered by a white sheet or bag.

The black male, Defendant Ernest Jones, was apprehended by police and placed in "investigative custody." He was handcuffed and placed in the back seat of a police vehicle between Detective Harris and Detective McCarroll, another task force agent assigned from the Davidson County Sheriff's Department.

Defendant was orally advised of his <u>Miranda</u> rights. Defendant said he understood those rights and waived the right to remain silent. Defendant then confessed to robbing the U.S. Bank utilizing a "toy gun" which consisted of sticks taped together with a plastic bottle for the stock. Defendant stated he robbed the bank because he needed money and had a drug habit.

In recounting the robbery, Defendant said he asked the tellers for fifty and one hundred dollar bills and when he received the money he left the bank and drove away in his Bonneville. Defendant told the officers that after leaving the bank he went to an undisclosed location to purchase crack cocaine from an unidentified source. Defendant then went to the motel and registered for a room. He told the officers that the remaining proceeds from the bank robbery could be found under a pillow in his room.

3

Detective Harris asked Defendant if officers could search his vehicle and motel room. Defendant readily agreed and signed a "Consent to Search" form. (Govt. Ex. 1). The form indicates Defendant was asked to consent to a search of his motel room and vehicle, Defendant was advised of his right to refuse consent, and Defendant voluntarily gave his permission to search the room and car.

During the subsequent search of the vehicle, police officers found a black toboggan hat and the toy gun. A search of the motel room revealed, among other things, $2,415.00 under a pillow on the bed. (Govt. Ex. 2).[2] A search of Defendant's person revealed $70.00 in United States currency.

Throughout the course of these events, none of the officers present saw any indication that Defendant was impaired or otherwise under the influence of any drugs or alcohol. Defendant was not disoriented, nor was his speech slurred and he made no involuntary movements. Defendant understood the questions asked of him and gave responsive and appropriate answers. There was no smell of crack cocaine on Defendant's person, in his vehicle or in his motel room which would be common if crack cocaine had been smoked recently.

---

[2]During the search of the motel room, police also discovered a small amount of what appeared to be crack cocaine (consisting of several rocks) and a crack pipe. Those items are not listed on the inventory from the search. At the evidentiary hearing, officers explained that those items were turned over to Metro police for state prosecution but subsequently were returned to the possession of the F.B.I. for testing.

4

At the evidentiary hearing, Defendant testified he did not tell the police he robbed the bank.  He claims that on the morning of the bank robbery he purchased seven grams of crack cocaine for $100.00 and utilized a credit card for that purchase.  He stated that he was given a good deal on the purchase because crack cocaine generally costs $100 dollars a gram on the street.  Prior to his apprehension by police, Defendant testified he smoked two grams of crack cocaine and that one-half gram would "have an affect" on him.

With regard to the Consent to Search form, Defendant claims he only consented to the search of his room and that, after the fact, the police wrote in the consent to search his car.  As for the money found under the pillow in his motel room, Defendant claims that "John," a person he does not know well and whose last name he does not know, must have placed the money there because "John" had borrowed Defendant's car earlier that day.

This Court finds Defendant's testimony not credible.  As between the testimony of the officers and Defendant with regard to whether Defendant was intoxicated or otherwise "affected" by having smoked crack cocaine the morning of the robbery, this Court credits the testimony of the officers.  Specifically, this Court finds no evidence to support Defendant's contention that he was "affected" by crack cocaine that morning, let alone incapable of waiving his <u>Miranda</u> rights or consenting to a search of his room and vehicle.

Instead, the Court finds that Defendant understood his right to counsel and to remain silent, knowingly and voluntarily waived

5

his right to counsel, and freely spoke to the officers.  The Court further finds that Defendant, with full knowledge of his right to refuse, knowingly and voluntarily consented both to the search of his motel room and his vehicle.

## II.  APPLICATION OF LAW

Both of Defendant's motions to suppress are grounded upon his assertion that he was under the influence of crack cocaine at the time that he was approached by police officers and therefore he could not have made a voluntary statement, waived his <u>Miranda</u> rights, or validly consented to a search.

### A.  Voluntary Statement and Waiver of Miranda Rights

Defendant asserts that because he was intoxicated at the time he signed the waiver form and provided a statement, his statement must be suppressed because it was involuntary and a result of coercion.  This Court disagrees because it can find no credible evidence to support the Defendant's contention that he was intoxicated or otherwise impaired from having smoked crack cocaine on the morning of January 9, 2006.

As the parties to this dispute recognize, a <u>Miranda</u> waiver will be upheld only if, under the totality of the circumstances, the waiver was voluntary, knowing and intelligent.  "When a defendant claims that a confession was coerced, the government bears the burden of proving by a preponderance of the evidence that the confession was in fact voluntary." <u>United States v. Mahan</u>, 190 F.3d 416, 422 (6th Cir. 1999).  A statement is coerced or

6

involuntary if the police activity was coercive, the coercion in question was sufficient to overcome the defendant's will, and the alleged misconduct was a "crucial motivating factor in the defendant's decision to offer the statement." Id.

In this case, Defendant essentially claims he was deprived of his ability to exercise free will because he had smoked crack cocaine and the police officers took advantage of his impaired condition to elicit a statement. The only evidence to support this position is Defendant's testimony and the fact that crack cocaine and a crack pipe were found in his room.

However, this Court has specifically found that Defendant's testimony about having smoked cocaine (and certainly about being affected by having smoked crack cocaine to excess) was not credible, just as the remainder of his story, including "John's" involvement in the robbery, was not credible. The police officers' testimony about Defendant's appearance, demeanor and ability to answer questions was credible, as was their testimony that Defendant voluntarily waived the Miranda warnings which were orally given to him.

The facts in this case leading up to Defendant's voluntary statement are similar to those in United States v. Miggins, 302 F.3d 384 (6th Cir. 2002) where the Sixth Circuit upheld the denial of a motion to suppress writing:

> In this case, the district court did not err in finding that Moore knowingly, voluntarily and intelligently waived his *Miranda* rights. The evidence presented at Moore's suppression hearing established that

7

> after Officer Adams orally advised Moore of his *Miranda*
> rights, Moore stated that he understood them. Moore also
> agreed to answer Officer Adams' questions without first
> speaking to attorney. There is nothing in the record to
> indicate that Moore's will was overborne such that he was
> coerced into making statements to Officer Adams.
> Although Moore suggests that his waiver was not
> knowingly, voluntarily and intelligently made because he
> did not sign a waiver form listing his rights, he offers
> no authority, and none can be found, for the proposition
> that a written waiver is necessary to establish a
> knowing, intelligent and voluntary waiver of *Miranda* rights.

Id. at 397.

Likewise in this case Defendant, after being read his Miranda

warnings and stating that he understood them, voluntarily gave a

statement to the police. Since there is no credible evidence that

Defendant's will was overborne, or that he was impaired or

intoxicated as a result of having smoked crack cocaine, his motion

to suppress statements will be denied.

**B.  Motion to Suppress Evidence**

Defendant seeks to suppress the evidence seized as a result of

the search conducted pursuant to the consent form he signed.  He

contends that as a result of "crack cocaine induced intoxication,"

his consent was not voluntary and the search violated the Fourth

Amendment.  (Docket Entry No. 25 at 5).

The standards to be utilized in examining the voluntariness of

a consent to search has been explained by the Sixth Circuit as

follows:

> "[W]hether a consent to a search was in fact 'voluntary'
> or was the product of duress or coercion, express or
> implied, is a question of fact to be determined from the
> totality of all the circumstances." Schneckloth v.
> Bustamonte, 412 U.S. 218, 227, 93 S.Ct. 2041, 36 L.Ed.2d

8

854 (1973). The burden of proving that consent was voluntary is on the government. Id. at 222, 93 S.Ct. 2041. "[C]onsent must be proved by clear and positive testimony, and, to be voluntary it must be unequivocal, specific, and intelligently given, uncontaminated by any duress or coercion." United States v. Scott, 578 F.2d 1186, 1188-89 (6th Cir. 1978). The defendant's knowledge of his right to refuse to consent is a factor, but the government need not prove that the defendant had such knowledge to establish that consent was voluntary. Schneckloth, 412 U.S. at 226-27, 93 S.Ct. 2041.

United States v. Erwin, 155 F.3d 818, 823 (6th Cir. 1998).

Notably, "voluntary consent can be given even by a person under the influence of drugs, when that person is coherent and fails to exhibit any visible impairment." United States v. Griffin, 1997 WL 487325 *2 (6th Cir. 1997). In Griffin, the Sixth Circuit upheld the district court's denial of a motion to suppress evidence of a warrantless search of a home, even though the occupant who consented to the search had smoked crack cocaine and had "mental problems." In doing so, the Sixth Circuit noted that "nothing in the record indicates that [the occupant] was so impaired as to render her consent invalid." Id.

Likewise in this case, there is no credible evidence that Defendant was impaired when he signed the Consent to Search form. While he testified that he had smoked two grams and was "affected," this Court finds his testimony not credible. Against Defendant's testimony is the unequivocal testimony of the police officers that: (1) Defendant did not appear impaired; (2) Defendant understood the questions being asked of him; (3) Defendant responded appropriately to the questions asked; (4) Defendant did not slur his speech or

9

exhibit any involuntary movement; and (5) neither Defendant's clothes, car, or motel room produced the lingering smell of recently-smoked crack cocaine. Since this Court credits the testimony of the officers and rejects the testimony of the Defendant, the Government has shown, by clear and convincing evidence, that Defendant knowingly and voluntarily signed the Consent to Search form. Accordingly, Defendant's Motion to Suppress Evidence will be denied.

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion to Suppress Statement (Docket Entry No. 24) and Defendant's Motion to Suppress Evidence (Docket Entry No. 25) will be denied.

An appropriate Order will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE

10